AMALGAMATED WORKERS UNION OF THE VIRGIN ISLANDS, et al.

v.

HESS OIL VIRGIN ISLANDS CORP. AMALGAMATED WORKERS UNION OF THE VIRGIN ISLANDS, RUTHILIO DORCAS, OSMOND MITCHELL, RAPHAEL ROSA, and ORLANDO PEREZ, individually and representing as a class all other employees of Hess Oil Virgin Islands Corporation similarly situated and similarly injured, appellants

No. 72-1653

United States Court of Appeals

Third Circuit

Argued January 31, 1973

Filed April 23, 1973

JOHN M. O'QUINN, ESQ. (BROWN, KRONZER, ABRAHAM, WATKINS & STEELY), Houston, Texas, *for appellants*

ALEXANDER A. FARRELLY, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, V.I., *for appellee*

Before VAN DUSEN, ROSENN and HUNTER, *Circuit Judges*

### OPINION OF THE COURT

ROSENN, *Circuit Judge*

■ Plaintiffs (appellants) in this case are the Amalgamated Workers Union of the Virgin Islands and four of its members, suing on behalf of all members of the union who have worked a "rotating shift" for defendant Hess Oil

Virgin Islands Corporation. Plaintiffs instituted this suit as a class action in the District Court for the Virgin Islands in January 1972 alleging that Hess was violating the Virgin Islands Fair Labor Standards Act by requiring employees to work the "rotating shift" without overtime compensation. Defendant moved to dismiss the suit as a class action because there were superior procedures available to plaintiffs before the Commissioner of Labor. On May 22, 1972, the district court entered an order remanding the case "to the Department of Labor for determination on the merits."[1] Plaintiffs appeal that decision. For the reasons stated below we reverse.

The rights allegedly violated are conferred by 24 V.I.C. § 20, which establishes that overtime at the rate of at least one and one-half times the employee's regular rate must be paid any employee who works more than five consecutive days or longer than forty hours in a work week. The available remedies derive from 24 V.I.C. § 17. Section 17(a) provides that an employer who pays any employee less than the applicable rate shall be liable to the employee for the full amount of the applicable rate, for any costs, and reasonable attorney's fees allowed by the court. Subsection (b), upon which the district court apparently relied, authorizes the Commissioner of Labor to sue on behalf of an employee. It provides:

(b) At the written request of any employee paid less than the wage to which he is entitled under or by virtue of this chapter, the

---

[1] Although the district court memorandum and order are ambiguous, we interpret its action as a dismissal of the complaint. The decision was entered upon a motion to dismiss the "action as a class action," and there was no indication that the court intended merely to stay the action or that it retained jurisdiction. In effect, the decision necessarily amounted to a dismissal of the action, since the remand was to an agency that had no power to provide relief. The use of the term "remand" was inappropriate since the case originated in the district court, not in the Department of Labor. To "remand" a cause is to send it back to the court from which it came. Black's Law Dictionary 1457 (Revised 4th ed. 1968). See Northern Pacific Terminal Co. v. Lowenberg, 18 Fed. 339, 341 (Cir. Ct., D. Oregon 1883).

Commissioner may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court.

One can read the district court's dismissal of the action to have been predicated on any of three different, independent theories: (1) The Department of Labor has the expertise and personnel to make a superior adjudication and thus must be preferred under the requirements of F.R.C.P. 23(b)(3); or, (2) Application must be first made to the Department of Labor and its administrative remedies exhausted before court adjudication; or, (3) All wage litigation must be channelled through the Department.[2] We find no merit in any of these theories.

■ The district court's first possible theory constitutes a misapplication of the "superiority requirement" of Rule 23(b)(3). Rule 23(b)(3) provides one of three alternative prerequisites for a class action, in addition to the requirements of subsection (a). It provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and that a class action is superior to other available methods* for the fair and efficient adjudication of the controversy." (Emphasis added.) It then delineates factors pertinent to this question:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already

---

[2] The pertinent portion of the opinion of the district court reads as follows:

I am not convinced that a class action in the instant case is a superior method of adjudicating the claims of the plaintiffs. Plaintiffs have an administrative remedy in the first instance with the Commissioner of Labor. That department has far greater expertise and personnel available to determine the merits of the claims advanced herein. For that reason, I therefore remand this case to the Department of Labor.

commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As we view it, it would appear that the rule was not intended to weigh the superiority of a class action against possible administrative relief. The "superiority requirement" was intended to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit, and possibly requiring a defendant to answer suits growing out of one incident in geographically separated courts.

That possible administrative remedies were not intended to be considered as "other available methods" in deciding whether the class action is maintainable under Rule 23 is suggested by several considerations. Initially, the "superiority requirement" is stated in the same sentence that requires that the questions of law and fact common to the class members predominate over any questions affecting only individual members. Secondly, the factors stated to be pertinent to the two findings all relate to the desirability of having one suit instead of multiple suits. Finally, and perhaps most importantly, the advisory committee notes on the requirement focus on the question whether one suit is preferable to several. F.R.C.P. 23, Notes of Advisory Committee on Rules. We find no suggestion in the language of Rule 23, or in the committee notes, that the value of a class suit as a superior form of action was to be weighed against the advantages of an administrative remedy. We leave this question, however, for disposition in an appropriate case.

We are unable to perceive any reason why the "remedy" in section 17(b) of the Virgin Islands Fair Labor Standards Act, if cognizable under Rule 23, would be superior to

the class action. The expertise of the Commissioner is immaterial, since the ultimate decision on the merits must be by the district court. The Commissioner is not authorized to make any preliminary findings. He is authorized only to bring a suit on behalf of the employee in the district court. Moreover, the deterrent value of a suit for judicial vindication of statutory rights under the Virgin Islands Fair Labor Standards Act would, in all likelihood, be diminished by precluding a class action and thereby requiring each individual employee to file his complaint with the Commissioner. On the other hand, an appropriate class action for multiple claims based on violations of "wage and hour laws" may very well serve a prophylactic function. For these reasons, we think the district court relied on improper factors and abused its discretion in determining that subsection (b)(3) does not justify this class action.

We also note that the requirements of Rule 23(b)(3) need not be met if the requirements of one of the other subsections of Rule 23 are met. Subsection (b) also provides that a class action may be maintained if the prerequisites of subsection (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; ....

We think subsections (b) (1) and (2) might well apply to this suit because wage and hour litigants in the Virgin Islands would in the future, under the decision of the district court, have to press claims with the Commissioner of Labor, and any adjudication on the merits would establish a precedent applicable to all. Therefore, on remand, the district court should consider the applicability of subsections (b) (1), (2), and (3).

■ The district court's second possible theory, the doctrine of exhaustion of administrative remedies, does not depend on the class nature of the suit. If applicable, it would require named plaintiffs, as well as any class they represent, first to take their complaints to the Commissioner of Labor. This doctrine, however, is inapplicable to this case because the administrative agency does not have authority to grant the relief requested. See American Federation of Government Employees v. Resor, 442 F.2d 993, 995 (3d Cir. 1971). None of the actions the Commissioner is empowered to take would provide relief for the plaintiffs.[3] He cannot impose penalties, and his investigatory powers, although they might be helpful in litigation, would not result in an award of back pay to plaintiffs.[4]

---

[3] We do not suggest that the inability to provide the specific relief requested by the plaintiff will always preclude application of the exhaustion doctrine. In Laveson v. Trans World Airlines, 471 F.2d 76 (3d Cir. 1972), we applied the related primary jurisdiction principle to preclude a treble damage antitrust suit prior to consideration of the issues in the case by the CAB, even though that agency had no power to award damages. Laveson is different from this case, however, because the CAB did have the power to exempt the alleged wrongdoing from the antitrust laws. Here, the Commissioner has no power to grant exceptions to the employer from the minimum and overtime wage requirements.

[4] 3 V.I.C. § 356(a)(4)(A) directs the Department of Labor to administer and enforce the laws pertaining to wages and hours. We do not read that general mandate as an authorization to make an award of monetary damages for an aggrieved employee. We note that 24 V.I.C. § 5, part of the Fair Labor Standards Act, lists the powers of the Commissioner with respect thereto, but does not mention the power to award monetary damages to an aggrieved employee.

Counsel for plaintiffs has also called our attention to 24 V.I.C. § 11(a), which provides that any aggrieved person in any occupation for which a "wage order" has been issued may obtain judicial review in the district court. This provision concerns the issuance of orders prescribing minimum

■ For this reason, the argument that plaintiffs are required to press the suit through the Commissioner is not really an argument that plaintiffs should exhaust administrative remedies; it is an argument that the statute requires wage and hour litigation be channelled through the Commissioner. This third possible theory for dismissing the action is also inapplicable to this case. Section 17(b) contains no explicit language requiring that the employee request the Commissioner to prosecute his suit and imposes no other limitations upon his right to sue. It appears that the provision authorizing the Commissioner to sue for the employee was intended merely as an alternative for the employee who could not afford private counsel or, for one reason or another, preferred to have the suit prosecuted under official auspices. It no doubt serves a useful function in protecting an employee from fear of recrimination, and it may relieve him from embarrassment in pursuing his employer with legal action.[5]

Two federal statutes provide instructive comparisons. The Fair Labor Standards Act, 29 U.S.C. § 216(c),[6] is

wages under 24 V.I.C. § 10. It does not contain any authorization, implicit or otherwise, as suggested by plaintiffs, for an order awarding back pay to employees. We are naturally reluctant to find an implicit authorization when an explicit one would be so easy to provide. Moreover, it would seem anomalous, on the one hand, to authorize the Commissioner to award an employee his claim of back pay, and, on the other, to authorize him in the terms of 24 V.I.C. § 17(b) to bring a legal action to collect such claim.

We also note that the Commissioner of Labor has not promulgated any rules or regulations for the conduct of hearings to adjudicate wage claims although he has promulgated rules and regulations for the conduct of hearings to carry out his statutory authority to adjudicate unfair labor practice claims.

[5] Construing the analogous provisions in the United States Fair Labor Standards Act, 29 U.S.C. § 216, the court in Shultz v. Wheaton Glass Co., 319 F.Supp. 229, 231 (D.N.J. 1970), aff'd, 446 F.2d 527 (3d Cir. 1971), noted:

Congress was well aware that, in many instances, employees were reluctant to bring direct wage and hour actions against their employers for fear of subsequent retaliation.

[6] It provides in relevant part:

When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid over-time compensation under section 206 or section 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim. . . .

analogous to the Virgin Islands statute. It has been interpreted to permit suit by an employee without first requesting prosecution of the claim by the Secretary of Labor, even though the Secretary can bring suit at employee request. See DeFigueiredo v. Trans World Airlines, Inc., 322 F. Supp. 1384, 1388 (S.D.N.Y. 1971) ; Mitchell v. All-States Business Products Corp., 250 F.Supp. 403, 406 (E.D.N.Y. 1965) (dictum). Similarly, the courts have uniformly interpreted an analogous provision in the Labor Management Relations Act, 29 U.S.C. § 464(a),[7] to allow a union member to maintain a private action to challenge a union trusteeship without first filing a complaint with the Secretary of Labor. See, e.g., Hotel & Restaurant Employees and Bartenders International Union v. Del Valle, 328 F.2d 885, 886 (1st Cir.), cert. denied, 379 U.S. 879 (1964) ; Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 923–24 (4th Cir. 1963).

We need not reach the issue apparently raised for the first time on appeal whether exhaustion of remedies under the collective bargaining agreement is required. Appellee has not made an application to the court requesting a stay pending exhaustion of internal remedies and has not demanded that plaintiffs pursue any such remedies.

The judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.

---

[7] It provides in relevant part:

Upon the written complaint of any member . . . of a labor organization alleging that such organization has violated the provisions of this subchapter . . . the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred . . . he shall . . . bring a civil action in any district court. . . .