Filed:  March 31, 2006

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 05-2118
(CA-04-2612-8)

EARLE B. GREGORY; KEN BLINKO; BETTY C. COLEY;
VICKI  GRAINGER;  ETHEL  E.  GRAVES;  BECKY
HALSALL;  JOHN  S.  HALSALL,  III;  JERRY  F.
MCDANIEL;  VERONICA  T.  MCDANIEL;  LAVERNE
MCKENZIE; MARIANNE MCKENZIE; NATHAN J. NEELY;
ZEVIE  H.  NEELY;  SULINA  PRATHER;  KATHRYN
RODDEY; GINA TIBBS; JOHN A. TIBBS; JOHN C.
TIBBS;  BRENDA  D.  WATTS;  GERALD  D.  WATTS;  C.
ANN WILLIAMS; HENRY M. WILLIAMS, JR.; WESLEY
L. WILLIAMS, JR.; GRANT HALL; TOM MOORE; ANNA
NUNNERY; CHARLES SHOPE; PENELOPE SHOPE; KATHY
ANNETTE WOOD; SAM JONES WOOD; RUTH ANN HALL,

Plaintiffs - Appellees,

versus

FINOVA CAPITAL CORPORATION,

Defendant - Appellant.

O R D E R

The court amends its opinion filed March 14, 2006, as follows:

On page 4, line 13, the words "id. at" are added following "See, e.g.," in the citation.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EARLE B. GREGORY; KEN BLINKO;
BETTY C. COLEY; VICKI GRAINGER;
ETHEL E. GRAVES; BECKY HALSALL;
JOHN S. HALSALL, III; JERRY F.
MCDANIEL; VERONICA T. MCDANIEL;
LAVERNE MCKENZIE; MARIANNE
MCKENZIE; NATHAN J. NEELY; ZEVIE
H. NEELY; SULINA PRATHER;
KATHRYN RODDEY; GINA TIBBS; JOHN
A. TIBBS; JOHN C. TIBBS; BRENDA D.
WATTS; GERALD D. WATTS; C. ANN
WILLIAMS; HENRY M. WILLIAMS, JR.;                No. 05-2118
WESLEY L. WILLIAMS, JR.; GRANT
HALL; TOM MOORE; ANNA NUNNERY;
CHARLES SHOPE; PENELOPE SHOPE;
KATHY ANNETTE WOOD; SAM JONES
WOOD; RUTH ANN HALL,
                    *Plaintiffs-Appellees,*

v.

FINOVA CAPITAL CORPORATION,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
G. Ross Anderson, Jr., District Judge.
(CA-04-2612-8)

Argued: February 2, 2006

Decided: March 14, 2006

Before WIDENER, LUTTIG, and KING, Circuit Judges.

Reversed by published opinion. Judge Luttig wrote the opinion, in which Judge Widener joined. Judge King wrote an opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** Daniel P. Shapiro, GOLDBERG, KOHN, BELL, BLACK, ROSENBLOOM & MORITZ, LTD, Chicago, Illinois, for Appellant. Gilbert Scott Bagnell, BAGNELL & EASON, L.L.C., Columbia, South Carolina, for Appellees. **ON BRIEF:** Elizabeth Van Doren Gray, Allen J. Barnes, SOWELL, GRAY, STEPP & LAF-FITTE, P.L.L.C., Columbia, South Carolina; Steven A. Levy, Andrew R. Cardonick, GOLDBERG, KOHN, BELL, BLACK, ROSEN-BLOOM & MORITZ, LTD, Chicago, Illinois, for Appellant. Chad McGowan, S. Randall Hood, MCGOWAN, HOOD, FELDER & JOHNSON, Rock Hill, South Carolina; Randall M. Eason, BAG-NELL & EASON, L.L.C., Lancaster, South Carolina, for Appellees.

---

**OPINION**

LUTTIG, Circuit Judge:

Appellee-noteholders filed a class action suit against the principal lender of the now-bankrupt company that issued the notes. The district court certified the class action. However, there is a currently pending bankruptcy adversary proceeding dealing with most of the same questions at issue in the class action. We reverse the class certification because, in light of the adversary proceeding, the class action is not the superior method for the fair and efficient adjudication of the controversy.

I.

From 2000 to 2003, The Thaxton Group, Inc. (TGI), sold notes to appellees. J.A. 191-95. The notes, which TGI sold in a series of person-to-person transactions, *id.* at 448-647, were offered under at least eight separate registration statements that TGI filed with the

Securities Exchange Commission, *id.* at 2130-62. The appellee-noteholders allege that TGI sold these notes in order to repay a portion of the debt TGI owed to appellant, Finova Capital Corp., which was TGI's principal lender. *See id.* at 204. TGI filed for Chapter 11 bankruptcy on October 17, 2003. *See* In re *The Thaxton Group, Inc.*, No. 03-13183 (Bankr. D. Del. filed Oct. 17, 2003).

Shortly after TGI's bankruptcy filing, appellees filed this class action against Finova and TGI's lawyers and accountants.[1] The class action complaint alleges that TGI misrepresented financial data in the notes' registration statements in violation of section 11 of the Securities Act of 1933, 15 U.S.C. § 77l, and that Finova is jointly and severally liable for the misrepresentations under section 15 of the Securities Act, 15 U.S.C. § 77o, because Finova was "an active partner and counselor to" TGI, took "a leading role in most of [TGI's] major business decisions," and was "fully aware of the note sale program designed to transfer the risky portion of the Finova debt to the unsuspecting noteholders," J.A. 229-32. The class action complaint also asserts that Finova was a participant in a civil conspiracy, under South Carolina law, to sell "worthless securities to the plaintiffs with the purpose of transferring the money to Finova." *Id.* at 250.

Several months after the appellees filed their class action, the committee of TGI's unsecured creditors commenced an adversary proceeding against Finova in the Delaware bankruptcy court where TGI's bankruptcy was pending.[2] The unsecured creditors sought to have Finova's secured claims either disallowed or equitably subordinated to the noteholders' unsecured claims. *The Official Cmte. of*

---

[1] The lawyers and accountants do not appeal the class certification.

[2] The Delaware bankruptcy court set a bar date of February 27, 2004, for filing proofs of claim. Finova is TGI's sole secured creditor, holding approximately $110 million in debt secured by a lien on most of TGI's assets. TGI has approximately $120 million in unsecured debt, which includes the debt held by the noteholders who are the plaintiffs in this class action. There are no unsecured priority creditors, and all of TGI's employees were paid after TGI's bankruptcy filing. At oral argument counsel for Finova represented that there was approximately $160 million in TGI's bankruptcy estate. That representation was not disputed by the plaintiffs' counsel.

*Unsecured Creditors of The Thaxton Group, Inc.* v. *Finova Capital Corp.* (*In re The Thaxton Group, Inc.*), No. 04-53129 (Bankr. D. Del. filed Mar. 24, 2004). The adversary complaint alleges that Finova violated banking laws and regulations, securities laws and regulations, and fiduciary duties owed to TGI. J.A. 70-170. It includes allegations of the same securities law violations alleged in appellees' class action — that is, controlling-person liability under section 15 for TGI's section 11 violations. *Id.* at 150-51. While the adversary complaint does not contain any allegation of a South Carolina civil conspiracy, the substance of the civil conspiracy claim is alleged repeatedly, as many of the complaint's allegations depend upon the existence of a scheme to sell worthless securities to the noteholders in order to allow TGI to repay money owed to Finova. *See*, *e.g.*, *id.* at 155-58.

The district court acted on the appellees' class action complaint by certifying the class action and designating three subclasses, only two of which included plaintiffs pursuing claims against Finova. The first subclass comprises TGI noteholders who "purchased notes during the three-year period prior to October 16, 2003 and who held these notes as of the date that Thaxton discontinued the note program on September 29, 2003" and who are pursuing section 15 claims against Finova for TGI's section 11 violations. *Id.* at 2253-54. The second subclass comprises TGI noteholders who "held notes purchased from Thaxton as of September 29, 2003 when Thaxton discontinued its note program" and who are pursuing civil conspiracy claims against Finova. *Id.* at 2254. In certifying the class action, the district court found that the action satisfied all of the requirements of Federal Rule of Civil Procedure 23. *Id.* at 2254-61. Specifically, it found that "a class action is the superior method available for the fair and efficient adjudication of Plaintiffs' claims." *Id.* at 2260.

Pursuant to Federal Rule of Civil Procedure 23(f), Finova filed a petition in this court for permission to appeal the district court's class certification. We granted Finova's petition for permission to appeal, stayed the class action proceedings pending in the district court, and now reverse the district court's class certification.

## II.

We review the district court's certification decision for abuse of discretion. *McClain* v. *South Carolina Nat. Bank*, 105 F.3d 898, 902 (4th Cir. 1997). Though, in order to be affirmed, the district court must exercise its discretion "within the framework of Rule 23." *Lienhart* v. *Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). In addition to satisfying the numerosity, commonality, typicality, and representativeness requirements of Federal Rule of Civil Procedure Rule 23(a), actions certified under Rule 23(b)(3) must satisfy the predominance and superiority requirements. *Id*. The party seeking class certification bears the burden of proof on these elements. *Id*. We address only Rule 23(b)(3)'s superiority requirement, which requires that the district court find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[3] Rule 23(b)(3)(B) deems "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class" a pertinent consideration in deciding whether the class action is superior.

The district court concluded that the class action was superior to other available methods for the fair and efficient adjudication of this controversy by comparing the class action to thousands of individual suits, without even mentioning the adversary proceeding in its analysis.[4] *See* J.A. 2260-61 ("One class action, with subclasses, remains unques-

---

[3]A necessary condition to certification under Rule 23(b)(3) is the class action's superiority to all other methods for the fair and efficient adjudication of the controversy. Thus, a class cannot be certified under Rule 23(b)(3) if there is a method to which the class action is not superior. As long as the class action is not superior to one method, it makes no difference whatsoever that the class action is superior to other methods. In this case, even if it were true that the class action would be superior to individual actions, the class cannot be certified if it is not superior to the adversary proceeding.

[4]There is no question that the district court knew of the existence of the adversary proceeding when it certified the class action. The adversary proceeding was filed more than a year before the class action was certified, and the submissions made to the district court arguing for class certification discussed the pending adversary proceeding. *See* J.A. 360.

tionably superior to thousands of separate trials that might lead to disparate results."). It was an abuse of discretion for the district court to find the class action superior without analyzing whether it was superior to the adversary proceeding — the only other pending, collective proceeding having to do with the same controversy as the class action. By failing to analyze whether the class action was superior to the adversary proceeding, the district court did not consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," as Rule 23(b)(3)(B) advises.

When the class action is compared to the adversary proceeding, it is clear that the former is not superior to the latter. The bankruptcy court must decide the matters raised in the adversary proceeding in order to determine the validity and priority of TGI's creditors' claims. It would be inefficient and needlessly duplicative to allow the class action to go forward when the adversary proceeding will likely adjudicate this controversy in the normal course of TGI's bankruptcy.[5] The adversary proceeding presents no danger of unfairness due to disparate results because it, like the class action, will yield a single result

---

[5]The dissent characterizes the adversary proceeding as concerning "only whether Finova must wait behind the noteholders in line for TGI's assets," *post* at 10, and distinguishes it from the class action, which it characterizes as presenting the issue of Finova's direct liability to the noteholders, *id*. However, the two proceedings are not as distinct as the dissent makes them seem. The conduct that could cause the court to put Finova behind the noteholders in line for TGI's assets in the adversary proceeding includes the same conduct that could give rise to Finova's direct liability to the noteholders. Specifically, a finding that Finova is liable as a controlling person for TGI's securities law violations or that Finova participated in a civil conspiracy to sell worthless securities would likely be sufficient to put Finova behind the noteholders in the line for TGI's assets. Those findings are precisely the findings that the noteholders seek in this class action.

Furthermore, if the noteholders are made "more or less whole" by success in the adversary proceeding, which success would result in payment from TGI's assets ahead of Finova, Finova's direct liability to the noteholders will be "more or less" extinguished. *See* 15 U.S.C. § 77o (making controlling persons liable "jointly and severally with and to the same extent" as controlled persons).

for all of the noteholders. Also, the adversary proceeding will avoid many of the expenses and complexities associated with having the class action and the adversary proceeding pending simultaneously (such as those presented in the case before us today). For these reasons, the class action cannot be considered the superior method for the fair and efficient adjudication of the controversy.

Appellees contend that the class action is superior to the adversary proceeding because "the adversary proceeding seeks relief that is different from the relief in this action." *Appellee's Br.* at 59. Specifically, appellees point to their claim for punitive damages and the potential availability of pre- and post-judgment interest in the class action. However, this disparity in the relief requested does not overcome the considerations that lead us to conclude that the class action is not the superior method for fairly and efficiently adjudicating the controversy.[6] Our conclusion is reinforced by the fact that the class action plaintiffs have acknowledged that, if successful in the adversary proceeding, they could be made "more or less whole." J.A. 360. The fact that the relief sought in the two actions differs slightly is not enough to persuade us that the class action is superior.

## CONCLUSION

The judgment of the district court is reversed and the case is remanded.

*REVERSED*

---

[6]It is not clear that the disparity in the relief requested is the result of any structural impediment to asserting a claim for punitive damages or pre- and post-judgment interest in the bankruptcy adversary proceeding. There does not appear to be any bar to bringing the claim for punitive damages in the adversary proceeding. Indeed, the adversary complaint currently requests punitive damages on at least one claim. J.A. 169. And, the availability of pre- and post-judgment interest in the bankruptcy proceeding appears to be an open question the decision of which depends upon the characterization of the claims that succeed in the adversary proceeding.

KING, Circuit Judge, concurring in part and dissenting in part:

While I agree that the stay should be dissolved, I would affirm the class certification. I write separately for two reasons: to explain my position on the dissolution of the stay, and because my friends of the panel majority have erroneously reversed the portion of the district court's class certification order that is on appeal.

I.

First of all, I support the prompt dissolution of the stay pending appeal which we placed on the district court proceedings on October 14, 2005. In my view, the district court proceedings involving the defendants who are non-parties to this appeal — the accounting firm of Cherry, Bekaert & Holland, L.L.P. ("CBH") and the law firm of Moore & Van Allen, P.L.L.C. ("MVA") — should proceed unimpeded by the panel majority's ruling, which relates solely to the Finova Capital Corporation ("Finova").

The district court, by its certification order, certified three separate subclasses in this class action, which is being pursued by plaintiffs who purchased notes from The Thaxton Group, Inc. ("TGI"), a business now in bankruptcy. Subclass 1 involves the TGI noteholders' claims under the federal securities laws against Finova and CBH; Subclass 2 involves claims under the federal securities laws against MVA only; and Subclass 3 involves state tort claims against both Finova and MVA. Following the district court's ruling, Finova, CBH, and MVA each sought permission to appeal the certification order and a stay of the district court proceedings. After successfully negotiating settlement agreements with the representative plaintiffs on Subclass 2 and on those aspects of Subclasses 1 and 3 relating to them, CBH and MVA moved separately to dismiss their appeal proceedings and withdraw their stay requests. On October 6, 2005, we granted CBH's motion to withdraw its pending motions and dismissed its petition for permission to appeal. By order of October 7, 2005, we granted MVA's motion for voluntary dismissal of its petition for permission to appeal and its motion for a stay pending appeal, and we dismissed its appeal.[1]

---

[1] Finova's petition for permission to appeal was originally docketed here as No. 05-337, CBH's as No. 05-338, and MVA's as No. 05-339. As noted above, Nos. 05-338 and 05-339, as to CBH and MVA, have been dismissed.

Thereafter, on October 14, 2005, we granted Finova's petition for permission to appeal and its stay request, and entered the order staying the district court proceedings during Finova's appeal. As a result, the settlements negotiated by CBH and MVA with the class representatives (encompassing Subclass 2 and parts of Subclasses 1 and 3) have not been consummated. *See* Fed. R. Civ. P. 23(e) (requiring district court approval for settlement of claims asserted by certified class). Moreover, the separate adversary bankruptcy proceeding in the district court, which was initiated against Finova on behalf of TGI noteholders, has come to a halt.

Our panel rules today on the merits of Finova's appeal, and we have appropriately entered a separate order dissolving the stay of the district court proceedings. Because the stay is being vacated, the adversary bankruptcy proceeding may now go forward, and CBH, MVA, and the representative plaintiffs are free to seek consummation of their negotiated settlements.[2]

## II.

As noted above, however, I disagree with the panel majority's decision to reverse the certification order. Put simply, application of the proper standard of review should carry the day in this appeal, because we "should not interfere with a district court's ruling on class certification unless we find an abuse of discretion." *McClain v. S.C. Nat'l Bank*, 105 F.3d 898, 902 (4th Cir. 1997). As I see it, the panel majority has made two critical errors in deciding to upend the certification order. First, it has incorrectly concluded that the district court abused its discretion by not properly weighing the adversary bankruptcy proceeding in its superiority analysis. Second, in failing to remand to the

---

[2]For at least three sound reasons, the opinion of the panel majority should not, in my view, prejudice further settlement proceedings involving CBH and MVA. First, Subclass 2 and those portions of Subclasses 1 and 3 certified against CBH and MVA are not at issue in this appeal. Second, CBH and MVA have abandoned their efforts to appeal the certification order. Third, the panel majority's analysis, which relies on the availability of the adversary bankruptcy proceeding, has no application to those aspects of the certification order relating to CBH and MVA, because CBH and MVA are not involved in the bankruptcy proceeding.

district court for its reconsideration of the superiority issue, the panel majority has usurped the district court's role in class certification proceedings.

## A.

To begin, the panel majority has, in my view, incorrectly concluded that the district court erred in its superiority analysis by failing to properly consider the adversary bankruptcy proceeding. In so doing, the panel majority has misconstrued the relationship between the class action proceedings at issue in this appeal and the adversary bankruptcy proceeding pending in the district court. The plaintiffs, who are purchasers of notes from TGI, initiated the class action on behalf of themselves and similarly situated TGI noteholders (collectively, the "noteholders"). Their lawsuit seeks to hold Finova, which allegedly controlled TGI, jointly and severally liable for misrepresentations TGI made in the notes' registration statements, and also for Finova's use of TGI to operate a Ponzi scheme. In the adversary bankruptcy proceeding, by contrast, a committee representing the noteholders (the "Committee") seeks to subordinate Finova's claim on TGI's assets to those of the noteholders, and ultimately to recover from TGI, not Finova. Put simply, the class action proceedings and the adversary bankruptcy proceeding are fundamentally different, and the existence of one does not supplant the necessity for the other.

In concluding that the class action proceedings are not superior to the adversary bankruptcy proceeding, the panel majority presents a false choice for the resolution of the controversy at issue here. According to its opinion, the adversary bankruptcy proceeding provides an obvious outlet for the controversy embodied in the class action as certified, and the district court abused its discretion by not properly considering the availability of the adversary bankruptcy proceeding in its superiority analysis. The adversary bankruptcy proceeding — which concerns only whether Finova must wait behind the noteholders in line for TGI's assets — will not, however, resolve the separate controversy underlying this appeal, that is, whether Finova is directly liable to the noteholders.[3] And neither the pendency of the

---

[3]Importantly, it is uncertain whether the Committee will prevail in its equitable subordination claim even if it can establish Finova's liability

adversary bankruptcy proceeding nor the panel majority's decision precludes the noteholders from individually suing Finova on the claims now being decertified. That the same conduct underlies the claims asserted on the noteholders' behalf in both venues seems, to me, beside the point. *See ante* at 6 n.5. The district court simply was not, when it ruled on the class certification issues, compelled to decide whether to allow the class action to go forward alongside the adversary bankruptcy proceeding. Rather, as the court properly recognized, it was presented with a choice between class action proceedings and thousands of individual lawsuits.

For these reasons, the mere possibility that the adversary bankruptcy proceeding might one day extinguish the noteholders' direct claims against Finova is not relevant to the superiority analysis in this case. The crucial point, in my view, is the absolute certainty that the noteholders' direct claims against Finova will be extinguished when the applicable limitations period expires. As the plaintiffs emphasize, vacating the district court's certification order as to Finova will require each TGI noteholder to file a separate lawsuit in order to preserve his claims against Finova. And I am aware of no authority for a district court to dismiss these approximately 4000 individual lawsuits[4] by directing the noteholders to the adversary bankruptcy proceeding. Yet the panel majority's superiority analysis fails to address the prospect for — and potential impact of — such repetitive litigation, the only other method available for adjudicating the controversy presented in this appeal. *See ante* at 5 n.3.

The district court appropriately understood the choice presented to it (*i.e.*, class action proceedings or thousands of parallel lawsuits) and

---

under the securities laws. *See ante* at 6 n.5 (noting that "a finding that Finova is liable [under the securities laws] *would likely* be sufficient to put Finova behind the noteholders in the line for TGI's assets" (emphasis added)); *see also* 11 U.S.C. § 510(c)(1) (providing that bankruptcy court "may" subordinate claims "under principles of equitable subordination"); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (observing that equitable determinations are discretionary).

[4]At oral argument, plaintiffs' counsel represented, without contradiction, that there are approximately 4000 TGI noteholders, with approximately 6700 potential claims.

decided, in its discretion, that class action treatment (to the extent certified) was the superior method for a fair and efficient adjudication of the controversy between the noteholders and Finova. *See* Fed. R. Civ. P. 23(b)(3); *Amalgamated Workers Union v. Hess Oil V.I. Corp.*, 478 F.2d 540, 543 (3d Cir. 1973) (recognizing that superiority requirement "was intended to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding . . . rather than forcing each plaintiff to proceed by separate suit"). In these circumstances, its ruling on this point was not an abuse of its discretion, and the class certification order should be affirmed.

## B.

Quite apart from my view that the district court was within its discretion in making its superiority determination, the panel majority has arrogated unto itself the discretion vested in the district courts on class certification issues. Although our review of a trial court's class certification ruling is for abuse of discretion only, *see ante* at 5, the panel majority has nevertheless decided, in the first instance, that a class action proceeding is not superior to the adversary bankruptcy proceeding. *See ante* at 6-7; *see also, e.g., id.* at 7 ("The fact that the relief sought in the two actions differs slightly *is not enough to persuade us* that the class action is superior." (emphasis added)). Put simply, the scope of our deferential review does not, in my view, authorize us to supplant the role of the district court. If the district court somehow erred (and I am unable to agree that it did) in not properly considering the adversary bankruptcy proceeding in its superiority analysis, our remedy should be to vacate and remand, providing the court with the opportunity to first address the superiority issues under the appropriate rubric.

With all respect, I dissent on the merits and concur in our dissolution of the stay.